UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARY C. o/b/o KIMBERLY C.,
Deceased,

Plaintiff,

                              Case No. 6:21-cv-06358-TPK

    v.

COMMISSIONER OF SOCIAL           OPINION AND ORDER
SECURITY,

Defendant.

## OPINION AND ORDER

Plaintiff filed this action on behalf of her decedent, Kimberly C., under 42 U.S.C. §405(g) seeking review of a final decision of the Commissioner of Social Security.  That decision, issued by the Appeals Council on March 16, 2021, denied Kimberly's applications for disability insurance benefits and supplemental security income.  Plaintiff has now moved for judgment on the pleadings (Doc. 8), and the Commissioner has filed a similar motion (Doc. 9).  For the following reasons, the Court will **DENY** Plaintiff's motion, **GRANT** the Commissioner's motion, and direct the entry of judgment in favor of the Commissioner.

## I.  BACKGROUND

Kimberly protectively filed her application for benefits on February 1, 2019, alleging that she became disabled on March 31, 2017.  After initial administrative denials of her claim, and after she passed away and was substituted for by her mother, who is the plaintiff in this action, Plaintiff was given a hearing before an Administrative Law Judge on February 4, 2020.  Plaintiff and a vocational expert, Michael Smith, both testified at the hearing.

In a decision dated March 24, 2020, the Administrative Law Judge denied benefits.  He found, first, that Kimberly met the insured status requirements of the Social Security Act through December 31, 2017, and that she had not engaged in substantial gainful activity since her alleged onset date.  Next, he determined that she had severe impairments including systemic lupus erythematosus, degenerative arthritis in multiple joints, fibromyalgia, heart disease, coronary artery disease, hypertension, thrombocytopenia, anemia, and obesity.  He also concluded, however, that her impairments, considered singly or in combination, did not meet or equal the level of severity required to qualify for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ found that Kimberly had the residual functional capacity to perform sedentary work but with the ability to climb ramps or stairs only occasionally, never to climb ropes, ladders, or scaffolds, and

occasionally balance, stoop, kneel, crouch, and crawl.  Also, she could only occasionally reach overhead, finger, and feel bilaterally, and could frequently look up and down and turn her head to the left and to the right.

Moving to the next step of the sequential evaluation process, the ALJ found that Kimberly could not do her past relevant work as a resident care aide or a daycare worker. However, the ALJ concluded that someone with her residual functional capacity and with her vocational profile could do certain unskilled jobs including surveillance monitor, call out operator, and waxer.  He also found that such jobs existed in significant numbers in the national economy.  As a result, the ALJ concluded that Kimberly did not meet the requirements for disability under the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises a single issue, although with several subparts.  She contends that the ALJ's residual functional capacity and consistency findings are not supported by substantial evidence.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, Kimberly's mother, was the first witness to testify at the administrative hearing. She testified that her daughter was born on March 16, 1974, and passed away on December 12, 2019 (making her 43 years old on her alleged onset date).  Prior to her death, Kimberly suffered from a heart condition which caused shortness of breath and from arthritis which made it hard for her to walk or climb stairs.  Kimberly had obtained a GED and also a paralegal degree, although she never worked in that field.  Rather, she provided care to children and people with disabilities.  In her last job, she was a group home aide.

Plaintiff further testified that Kimberly had been diagnosed with fibromyalgia and lupus. Those conditions affected her ability to pick up objects and made her joints painful.  Her skin was also very sensitive to touch and to sunlight.  She did need assistance performing household tasks and, after leaving her last job, she spent most of her time at home.  Even walking 200 feet to her mother's home left her short of breath.

The vocational expert, Michael Smith, identified Kimberly's past work as resident care aide and daycare worker.  The former job is medium and skilled and the latter is light and semi-skilled.  He was then asked questions about a person with Kimberly's vocational profile who was limited to light work with certain restrictions relating primarily to reaching, fingering, feeling, and turning the head.  That person, he said, could do the daycare worker job but not the resident care aide job.  If the person were limited to sedentary work, however, both of those jobs would be precluded, but the person could work as a surveillance system monitor, call out operator, or waxer.  He also gave numbers for those jobs as they existed in the national economy.

### B.  Medical  Evidence

The relevant treatment records show the following. 2018 treatment notes show diagnoses of lupus and fibromyalgia, and they indicate that Kimberly suffered from joint and muscle aches as well as chest pain. She also showed right-sided tenderness. Prior to that, she had experienced prolonged, recurrent chest pain which had been diagnosed as coronary artery disease. Her symptoms were aggravated by exertion and also included shortness of breath, and she had such symptoms while working. The notes also show some uncertainty as to whether her chest pains were cardiac or musculoskeletal in nature, given that a stress test administered in 2016 showed no significant coronary artery disease, as did an angiogram done in 2018.

In late 2018 and in 2019, Kimberly was treated for a right shoulder rotator cuff impingement with a steroid injection. She was also treated for swelling of the right leg and for uncontrolled hypertension which caused various symptoms. There are a number of treatment notes from that year indicating she was not reporting any chest pain. Another treatment note from September of that year showed that she exhibited mild to moderate sensorimotor polyneuropathy and mild carpal tunnel syndrome bilaterally.

## C.  Opinion Evidence

Kimberly was seen by Dr. Toor for a consultative internal medicine examination on March 22, 2019. She told Dr. Toor she had a mild heart attack in 2015 and that she had possible coronary artery disease. She was taking nitroglycerin for chest pain. Kimberly also reported pain in all of her joints due to arthritis and fibromyalgia and said that all physical activity was difficult for her. During the examination, she demonstrated difficulty getting on and off the examination table and she showed trigger points of fibromyalgia. She also showed deficits in hand and finger dexterity. Dr. Toor concluded that she had a moderate limitation during exertion and for prolonged sitting as well as for standing, walking, bending, lifting, and carrying, for reaching or twisting of the cervical spine, and for fine motor activity. (Tr. 533-36).

On April 24, 2019, Dr. DeCastro, one of Kimberly's treating physicians, completed a form for the Monroe County Department of Human Services on which he stated that she experienced chest pain and palpitations during normal working conditions . He thought she could work ten hours per week with reasonable accommodations and that the expected duration of this limitation was three months. (Tr. 621-24). He completed a similar form a year earlier on which he stated that she could work for 14 hours per week. (Tr. 626-29). Dr. Gupta, another treating source, concluded on March 8, 2018, that she could work a 40-hour week, however. (Tr. 630-33). The state agency reviewing physicians thought that she could perform a limited range of light work.

## III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

"[i]t is not our function to determine de novo whether [a plaintiff] is disabled."

*Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012)

## IV.  DISCUSSION

### A.  Residual Functional Capacity Finding

Plaintiff first argues that the ALJ's residual functional capacity assessment was erroneous because it was not based on the medical evidence but rather on his own lay assessment of the medical findings.  She asserts that there is no relevant medical evidence indicating how much walking, standing, climbing, or performing other postural activities Kimberly was able to do, and that the ALJ's decision also fails to account for Dr. Toor's view that Kimberly was moderately limited in her ability to sit for prolonged periods of time - an essential element of sedentary work - and also limited in her ability to engage in certain types of reaching and manipulation.  Lastly, she argues that the record contains nothing supporting the ALJ's conclusion that Kimberly could frequently look up and down and turn her head to the right and to the left.  The Commissioner responds that there are multiple medical opinions which provide support for the ALJ's decision, that the ALJ did not err by concluding that Kimberly was actually more limited that those sources indicated, and that Plaintiff has not shown that Kimberly's functional capacity was more limited than the one arrived at by the ALJ.

The ALJ began his residual functional capacity analysis by observing that Kimberly's activities of daily living appeared to be more robust than her claim of disabling symptoms would lead one to expect.  He then concluded that "the objective findings in this case fail to provide

strong support for [her] allegations of disabling symptoms and limitations." (Tr. 21). After summarizing the treatment notes, which contained mostly normal objective findings, the ALJ analyzed the opinion evidence, starting with the state agency reviewers. Although they believed Kimberly to be capable of light work, he concluded that their opinions were not consistent with the record as a whole, including the results of Dr. Toor's examination and findings from a variety of treatment notes showing "multiple complaints of chest pain, shoulder pain, and leg pain...." (Tr. 24). He found Dr. Toor's opinion "only partially consistent with the medical evidence of record," noting that "Dr. Toor did not take into account the claimant's obesity, thrombocytopenia, or anemia in formulating his opinion." (Tr. 25). Turning last to the treating sources, he accepted Dr. DeCastro's statement that Kimberly's heart condition did not limit her activities and therefore rejected the conclusion that she could work only a handful of hours per week, pointing out that the findings of objective tests on her heart indicated only mild disease, and he also accepted Dr. Gupta's conclusion that she could work 40 hours per week. (Tr. 26).

The basic requirements of sedentary work are, of course, the ability to stand or walk for up to two hours in a workday and the ability to sit for up to six hours. Although Plaintiff argues that there is no evidence from which the ALJ could properly infer that Kimberly had these abilities, the Court finds persuasive the Commissioner's argument that a number of the expert opinions support this finding. The state agency physicians thought she could stand or walk for up to six hours, a conclusion the ALJ discounted to some extent because they did not take certain of Kimberly's limiting conditions into account. Dr. Toor found moderate limitations in these areas and, as the Commissioner points out, courts regularly conclude that someone with moderate limitations in their work-related abilities may still be able to work at the light or sedentary exertional levels. *See, e.g., Rayshown M. v. Comm'r of Soc. Sec.*, 2022 WL 4298263, at *4 (W.D.N.Y. Sept. 19, 2022) ("a claimant is not necessarily disabled simply because he is moderately limited in prolonged standing, walking, sitting, bending, and lifting"). Although Dr. Gupta's opinion, upon which the ALJ also relied, has somewhat less relevance to Kimberly's ability to perform these particular work functions - he noted that such abilities were not assessed by his office - he still believed that nothing about her heart condition or hypertension prevented from working a 40-hour week. Those opinions, coupled with other evidence from treatment notes and about Kimberly's daily activities, permitted the ALJ to conclude, without relying on his lay interpretation of bare medical findings, that Kimberly was able to perform the sitting, standing, and walking requirements of sedentary work. *See also Ortiz v. Comm'r of Social Security*, 309 F.Supp.3d 189 (S.D.N.Y. 2018)(activities of daily living can support finding that, despite claimant's testimony to the contrary, that claimant can do sedentary work).

As Plaintiff notes, the ALJ also imposed some restrictions on Kimberly's ability to manipulate objects and to turn her head. The former restrictions are consistent with, and supported by, Dr. Toor's findings that Kimberly had some difficulty with certain tasks like grasping, holding, and manipulating a coin, and his conclusion that she had "moderate limitations doing fine motor activity with the hands." (Tr. 536). The latter find support in Dr. Toor's observation that Kimberly had mild to moderate limitations twisting her cervical spine and had moderate restrictions on reaching. *Id*. Consequently, the Court finds no merit in Plaintiff's argument that the ALJ's residual functional capacity finding was not based on

-5-

substantial evidence.  This conclusion also undercuts Plaintiff's assertion that the ALJ was
bound to supplement the record because it was insufficient to permit a finding to be made as to
Kimberly's functional capacity.  *See Pellam v. Astrue*, 508 Fed.Appx. 87, 90 (2d Cir. Jan. 28,
2013).

## B.  Consistency Finding

The final argument contained in Plaintiff's memorandum relates to the consistency
finding made by the ALJ.  The ALJ determined that there were inconsistencies between
Kimberly's self-reported symptoms and the other evidence of record.  Plaintiff argues that
despite this finding, the ALJ did not actually identify any such inconsistencies and that, in any
event, such inconsistencies do not exist.  In response, the Commissioner points to the
"overwhelmingly normal physical examination results" and Kimberly's own reports to her
physicians concerning her condition as evidence that her symptoms were not disabling.  *See* Doc.
9, at 23.

As this Court has said,

> In assessing the credibility of a claimant's subjective complaints, the
> Commissioner's regulations require ALJs to employ a two-step inquiry. *Meadors
> v. Astrue,* 370 F. App'x 179, 183 (2d Cir. 2010). "First, the ALJ must determine
> whether the claimant suffers from a 'medically determinable impairment[ ] that
> could reasonably be expected to produce' " his symptoms. *Id*. (quoting 20 C.F.R.
> § 404.1529(c)(1)). "Second, the ALJ must evaluate the intensity and persistence
> of those symptoms considering all of the available evidence; and, to the extent
> that the claimant's [subjective] contentions are not substantiated by the objective
> medical evidence, the ALJ must engage in a credibility inquiry." *Id*.

*James D. v. Comm'r of Soc. Sec.*, 547 F. Supp. 3d 279, 289 (W.D.N.Y. 2021).

Here, the ALJ recited this legal standard appropriately when he began his residual
functional capacity analysis.  *See* Tr. 20.  He then concluded that "the objective findings in this
case fail to provide strong support for the claimant's allegations of disabling symptoms and
limitations."  (Tr. 21).  That statement was followed by a review of the medical notes compiled
by Dr. DeCastro, Dr. Gupta, and Dr. Quaidoo.  He also discussed the findings from Dr. Toor's
examination. After doing so, and after finding that "the claimant's statements concerning the
intensity, persistence and limiting effects of [Kimberly's] symptoms are not entirely consistent
with the medical evidence and other evidence in the record," he last discussed Kimberly's
activities of daily living, including the fact that she lived independently with her daughter, could
drive, pay her bills, perform light household chores, and shop.  (Tr. 26).

The Court cannot agree with Plaintiff that the ALJ failed to identify inconsistencies
between the evidence and the way in which Kimberly and her mother described Kimberly's
limitations.  The ALJ accurately observed that the medical findings were, for the most part,

-6-

normal, particularly those relating to chest pain, its origins, and its intensity.  It is also apparent from his decision that he considered these inconsistencies in making his finding.  That finding was articulated with sufficient clarity to permit this Court to engage in meaningful review, and it is supported by the record.  That being so, and given that "credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Perez v. Barnhart*, 440 F.Supp.2d 229, 235 (W.D.N.Y. 2006) (quotation omitted), the Court finds no basis for reversal based on this claim of error.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 8), **GRANTS** the Commissioner's motion (Doc. 9), and **DIRECTS** the Clerk to enter judgment in favor of the Commissioner.

**/s/ Terence P. Kemp**
**United States Magistrate Judge**